IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-01049-EWN-PAC

MITCHELL THEOPHILIUS GARRAWAY,

Plaintiff,

v.

UNITED STATES OF AMERICA, EX REL., VIA:
FEDERAL BUREAU OF PRISONS,
GUY DRENNAN,
DALE GRAFTON,
JOSEPH GUNJA,
KENNETH LINCOLN,
MIKE MARONI,
LEONEL ORTEGA,
HECTOR A.RIOS,
LEE RITTENMEYER,
MARK ROBLES,
RICHARD SAMS,
CELEST SANTOS-COLLINS,
BENJAMIN VALLE,
AUDREY WATSON,

Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Patricia A. Coan, United States Magistrate Judge

This is a *pro se* prisoner civil rights action under *Bivens v. Six Unknown Named*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff claims that

defendants violated his Fifth and Eighth Amendment rights when they assaulted him,

placed him in ambulatory restraints for more than two days, and forced him to remain in

clothing soiled with feces after he was unable to remove his pants and relieve himself.[1] Plaintiff seeks compensatory and punitive damages.

A July 22, 2004 Order of Reference under 28 U.S.C. §636(b) referred this case to now retired Magistrate Judge Schlatter to conduct pretrial proceedings and to issue recommended rulings on dispositive motions.   The case was reassigned to me on February 10, 2006.

The following matters are before the court at this time: (1) Federal Defendants' Motion to Dismiss, filed April 19, 2005; and (2) Defendants' Motion for Summary Judgment and Brief in Support Thereof, filed September 16, 2005.   The motions are fully briefed and I have determined that oral argument would not be of material assistance.

## I.  Motion to Dismiss

Defendants United States and the Federal Bureau of Prisons ("BOP") move to dismiss plaintiffs' claims against them for monetary relief for lack of subject matter jurisdiction.

The party bringing an action in federal court bears the burden of showing that the case falls within the court's subject matter jurisdiction.  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994).

 The United States, its agencies, and its officers sued in their official capacities enjoy absolute immunity against suit for monetary damages for constitutional violations.

---

[1]Plaintiff also alleged a claim that several of the defendants violated his First Amendment free exercise rights when they refused plaintiff's requests to remove the ambulatory restraints so that plaintiff could wash and pray as required by his Islamic faith.  Plaintiff's First Amendment claim was dismissed on September 30, 2004.

*See FDIC v. Meyer*, 510 U.S. 471 (1994); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir.2001).   Accordingly, the United States and the BOP should be dismissed because the court lacks jurisdiction over plaintiff's constitutional claims for monetary relief against those entities.[2]

## II.  Motion for Summary Judgment

A.   Standard of Review

The purpose of summary judgment is to determine whether trial is necessary.  *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).   Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988).   To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff."    *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial.  *Handy v. Price,*  996 F.2d at 1064, 1068 (10th Cir. 1993).

In addition, I construe plaintiff's pleadings liberally because he is *pro se. Haines v.*

---

[2]Plaintiff does not seek prospective injunctive relief.

*Kerner*, 404 U.S. 519, 520-21 (1972).

B.    Qualified Immunity

The individual defendants have asserted the qualified immunity defense in response to plaintiff's constitutional claims against them in their personal capacities. Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right.  *See Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)(internal citation omitted).  If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity.  *Smith*, 339 F.3d at 1211. If the plaintiff establishes that defendant's conduct violated a clearly established right, the burden shifts to the defendant to prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Medina v. Cram*, 252 F.3d 1124, 1128(10th Cir. 2001)(internal quotation omitted).  Accordingly, to survive summary judgment, plaintiff must point to evidence in the record that "rebut[s] the presumption of the officer's immunity from suit."  *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001).

C.    Excessive Force - SHU Lieutenant's Office

Plaintiff claims that defendants Rittenmeyer, Lincoln and Robles used excessive

4

force on February 12, 2003 when they assaulted him in the SHU lieutenant's office, in violation of plaintiff's Eighth Amendment rights.

      1.   <u>The evidence</u>

      The following facts are undisputed, or if disputed, are construed in plaintiff's favor on a motion for summary judgment.   Plaintiff is incarcerated at USP-Florence, in the Special Housing Unit ("SHU").  (Compl., at 2-3) On February 12, 2003, at approximately 9:00 a.m., defendant prison guard Watson ordered plaintiff to submit to hand restraints so that Watson could move plaintiff from his cell to the shower.  (Compl., at 3[3]) Plaintiff complied.  (*Id.*)  Watson placed leg irons on plaintiff, escorted plaintiff to the shower, and locked plaintiff inside.  (*Id.*)  Watson then returned to plaintiff's cell and searched it.  (*Id.*)  Watson completed his search of plaintiff's cell at approximately 9:15 a.m. and told plaintiff that defendant Lt. Rittenmeyer wanted to see plaintiff in the SHU lieutenant's office.  (*Id.*)  Plaintiff responded that he did not want to speak to Rittenmeyer and asked Watson to escort him back to his cell.  (*Id.*) According to plaintiff, he observed Watson go to the lieutenant's office, relay plaintiff's statement to Rittenmeyer, and saw Rittenmeyer "bec[o]me enraged and extremely agitated - clenching his fists, rapidly swinging his arms back and forth, stomping his foot and angrily replied to Watson, `[g]et his ass in my office now! We're about to have some fun!'" (*Id.*)  Watson returned to the shower accompanied by guards Spann and Santiago and ordered plaintiff to submit to an escort.  (*Id.* at 3a) Plaintiff sat down on the shower floor. (*Id.*)  Watson and the other guards lifted plaintiff off

---

[3]I treat the factual allegations in plaintiff's complaint as an affidavit because plaintiff has sworn the allegations to be true under penalty of perjury under 28 U.S.C. §1746. *See Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997).

the floor and dragged/carried him to the lieutenant's office, while defendant prison guard Robles followed from behind. (*Id.*) Once inside the office, they placed plaintiff in a chair in front of Rittenmeyer, and then Spann and Santiago left. (*Id.*)   Defendant Lincoln, a counselor, was also present in the office. (*Id.* at 2a, 3a)

Plaintiff describes the ensuing incident in the SHU lieutenant's office as follows: After  guards Spann and Santiago left the office, Rittenmeyer stated: "You're a fucking coward Garraway, you stabbed a white man in the back!"[4] (Compl., at 3a) Plaintiff, who was still handcuffed and secured by leg irons, rose from his chair and began to walk toward the door in an attempt to leave. (*Id.*, 3c) Rittenmeyer ordered Robles, Lincoln and Watson to "take him down. Take his black ass down hard!" (*Id.* at 3a) Robles responded by pushing plaintiff hard in the chest. (*Id.*) Plaintiff stumbled backwards, but stayed on his feet. (*Id.*) Lincoln then hit plaintiff in the jaw three times with his fist. (*Id.*)  Rittenmeyer became angrier and again ordered his subordinates to "take [plaintiff's] ass down hard now." (*Id.*) Robles placed his foot between plaintiff's shackled feet, pressing down hard on the leg iron chain to prevent plaintiff from maintaining his balance, while simultaneously striking plaintiff in the face and neck with his forearms, causing plaintiff to fall backwards and hit his head on a chair or table. (*Id.*) Rittenmeyer walked over to plaintiff and jerked on plaintiff's handcuffs forcefully enough to cause abrasions to plaintiff's wrists. (*Id.*) Rittenmeyer kicked plaintiff's face four times, while telling him "you don't leave my presence 'til I tell ya to leave! Is that clear?"  Rittenmeyer then ordered the defendants in

---

[4]Rittenmeyer's comment presumably refers to plaintiff's state court conviction for first degree murder for which he is serving a life sentence. (MSJ Ex. 21, Sentence Monitoring Computation Data) There is no evidence that plaintiff stabbed anyone while in prison. (*Id.,* Inmate Discipline Data)

the office to place plaintiff in ambulatory restraints and to escort him back to the shower. (*Id.*)  Plaintiff states that Watson was standing close by while the assaults occurred, but did not do anything to prevent Lincoln, Robles and Rittenmeyer from striking him.  (*Id.*)

The defendants who were present in Rittenmeyer's office at the time of the incident state that moments after the escorting officers placed plaintiff in the chair, plaintiff got up without permission and "lunged," "charged," "mov[ed] quickly," or moved in a "threatening" or "aggressive" manner toward the escorting officers, Spann and Santiago, who were leaving the office.  *See* Declarations of  Lincoln, at ¶9, Rittenmeyer, at ¶13, Mark Robles,¶9, and Watson, at ¶15.  Robles avers that "at the time I saw Garraway coming towards me, I viewed him as a threat to myself and the other staff nearby." (Robles Declaration, ¶12) Robles responded by "grabb[ing]" plaintiff and forcing him to the ground. (*Id.* at ¶11; Rittenmeyer Declaration, at ¶15-16) Robles states that he did not injure plaintiff in any way and that he did not see any other staff member make physical contact with plaintiff, except to place plaintiff in ambulatory restraints. (Robles Declaration, at ¶17-19) Lincoln and Rittenmeyer state that they did not punch, kick or otherwise physically assault the plaintiff. (Lincoln Declaration, at ¶11; Rittenmeyer Declaration, at ¶8)  Watson and Santiago did not see any staff members physically assault the plaintiff and did not observe any physical injury to plaintiff as a result of his being forced to the ground.  (Watson Declaration, at ¶¶17, 22; Declaration of Steven Santiago, at ¶12)

Defendant physician's assistant Santos-Collins examined plaintiff on February 12, 2003 at approximately 10 a.m.  (Collins Declaration, at ¶7 and attached Inmate Injury Assessment report) Collins states that plaintiff was in hard ambulatory restraints during the

examination, was oriented to time, place and person, and was able to walk and move, but was "cursing" at the prison guards and was uncooperative.  (*Id.* at ¶11-14) Collins further avers that plaintiff did not require any medical treatment and did not have any abrasions, contusions, or redness consistent with his claims that staff had assaulted him.  (*Id.* at ¶16-17)

Defendant Rittenmeyer issued plaintiff an incident report for attempted assault on staff.  (Compl. 3c, and attached Ex. 1) Rittenmeyer reported that plaintiff "lunged towards officer Spann in a very aggressive manner."  (*Id.*)  During the disciplinary hearing, plaintiff submitted interrogatories for defendant Santiago.  (Compl. 3c, and attached Ex. 13) Santiago stated in response to one interrogatory that he did not observe plaintiff "lunge" at officer Spann or behave in an aggressive manner.  (*Id.*)  After a hearing, the disciplinary hearing officer ("DHO") found that no prohibited act was committed and ordered that the incident report be expunged.  (Compl. 3c, and attached Ex. 14)

2.    <u>legal analysis</u>

The critical inquiry in an Eighth Amendment excessive force claim is whether the force was applied by prison officials in a good-faith effort to maintain or restore discipline, or was applied maliciously or sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  In determining whether an Eighth Amendment violation has occurred, the court should consider "the relationship between [the need for application of force] and the amount of force used, the threat `reasonably perceived by the responsible officials,' and `any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  The absence of serious physical

8

injury does not preclude an excessive force claim because the constitutional inquiry focuses upon whether an "unnecessary and wanton infliction of pain" has occurred. *Id; Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Notwithstanding, de minimis applications of force, verbal threats and verbal harassment are not proscribed by the Eighth Amendment. *Hudson*, 503 U.S. at 7; *Northington,* 973 F.2d at 1524.

The SHU is a higher security area of the prison where inmates who are deemed unable to live in the general population are assigned. (Ex. 18, ¶18) Plaintiff has a history of insubordination and disruptive behavior and BOP staff considered him to be a problem inmate. (Lincoln Declaration, ¶5; Watson Declaration, ¶34)

Plaintiff admits that immediately before defendants' use of force against him, he was attempting to leave Rittenmeyer's office without permission and unescorted, which is a violation of prison rules. (Compl., 3a; Deposition of Mitchell Garraway, MSJ Ex. 3, at 57; (Declaration of Lee Rittenmeyer, ¶17; Declaration of Kenneth Lincoln, at ¶12) Accordingly, I recommend finding that some amount of force probably was justified to maintain order in the SHU, although the amount of force necessary was less because plaintiff was handcuffed and his legs were shackled at the time force was applied.

In his verified complaint, plaintiff's version of the assault in the SHU lieutenant's office differs markedly from that of defendants.   A reasonable jury could find that Lincoln hit plaintiff in the jaw with his fist three times maliciously and sadistically for the purpose of causing harm and that Rittenmeyer's kicking plaintiff in the face four times while plaintiff lay on the ground in handcuffs and leg restraints also was not part of a good faith effort to restore discipline, but was done maliciously and sadistically for the purpose of causing

9

harm.  Punching a restrained prisoner in the jaw three times with a closed fist and kicking

him in the face repeatedly are not de minimis applications of force.  If plaintiff's version of

events is believed, plaintiff did not lunge or charge at any prison guard, and it is doubtful

that he was moving very quickly while encumbered by leg restraints.  A jury could find that

plaintiff was not much of a threat to the prison guards.

Further, although several defendants maintain that plaintiff lunged or charged at

officers Spann and Santiago, plaintiff was not found guilty of the charge of attempted

assault in a prison disciplinary proceeding, based, at least in part, on Santiago's statement

in that proceeding that plaintiff did not lunge at him. There is also no evidence in the

record that plaintiff verbally threatened any of the defendants or that plaintiff has any prior

history of assaultive behavior while in prison. Accordingly, I recommend finding that

genuine issues of material fact remain about whether the force Rittenmeyer and Lincoln

used against plaintiff in the SHU lieutenant's office on February 12, 2003 violated plaintiff's

Eighth Amendment rights.  *See Merritt v. Hawk*, 153 F.Supp.2d 1216, 1223-24

(D.Colo.2001)(denying defendants' motion for summary judgment on prisoner's excessive

force claim because evidence that prison guards "body-slammed [plaintiff] against walls

and the floor, kicked, punched, and choked him, and slammed his head into walls, while

he was handcuffed" was"sufficient to allow a reasonable jury to infer defendants were

acting with malicious and sadistic intent").

I  further recommend finding that genuine issues of material fact remain about

whether Robles and Watson are liable for using excessive force against plaintiff.  Even if

Robles' alleged pushing the plaintiff in the chest and striking plaintiff in the face and neck

with his forearm to force plaintiff to the ground are not sufficient to constitute excessive force under the circumstances, both Robles and Watson may be held liable for failing to take action to prevent Rittenmeyer and Lincoln's unconstitutional conduct.  *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)(holding that a law enforcement officer who has an opportunity to intervene to prevent another law enforcement officer from using excessive force, but fails to do so, may be liable under §1983).

Moreover, although the physician's assistant who examined plaintiff found no objective signs of injury, refuting plaintiff's subjective statement that he suffered a "bleeding wound to the back of his head" as a result of the defendants' alleged assault (Plaintiff's October 5, 2005 Declaration, at p. 25, ¶33), "the ultimate constitutional inquiry is directed at whether an 'unnecessary and wanton infliction of pain' has occurred." *Northington*, 973 F.2d at 1523; s*ee, also, Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.").

I recommend finding that the law was clearly established in *Hudson,  Northington*, and *Mick* that prison officials' malicious applications of force, which  are more than *de minimis*, and that prison officials' failure to prevent such harm when there is an opportunity to do so, violate the Eighth Amendment. Accordingly, defendants Rittenmeyer, Lincoln, Robles and Watson should not be granted qualified immunity at this time.

D.    Constitutional Violations Arising from Placement in Ambulatory Restraints

Plaintiff claims that defendants Drennan, Gunja, Lincoln, Maroni, Ortega, Rios, Rittenmeyer, Robles, Valle and Watson violated plaintiff's Eighth Amendment right to be

free from excessive force and his Fifth Amendment substantive due process rights by placing and maintaining him in hard ambulatory restraints (consisting of handcuffs attached to a waist chain by means of a "black box" and a padlock and leg irons) for two days as punishment because plaintiff had refused to accept a cell mate.  Plaintiff asserts that the use of ambulatory restraints for punitive reasons violated BOP Program Statement ("PS") 5566.05, "Use of Force and Application of Restraints of Inmates," (MSJ Ex. 20).

The Eighth Amendment, rather than the Fifth Amendment Substantive Due Process Clause, serves as the primary source of protection for convicted prisoners against excessive use of force by prison guards. *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)(recognizing that any protection which substantive due process affords convicted prisoners is the same as that provided by the Eighth Amendment). Accordingly, I analyze plaintiff's claim under Eighth Amendment standards and consider the BOP's program statement directives on the use of ambulatory restraints in that context.[5]

The use of restraints for punitive purposes violates the Eighth Amendment.  *See Fulford v. King,* 692 F.2d 11, 14-15 (5th Cir.1982); *Williams v. Vidor*, 17 F.3d 857, 859 (6th

_____

[5]To the extent plaintiff claims that he has a liberty interest in not being placed in ambulatory restraints for punitive reasons and that he was therefore entitled to procedural due process protections (notice and an opportunity to be heard) before being restrained for fifty hours, his claim fails.  Under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), government-created liberty interests protected by procedural due process are limited to conditions of confinement that impose an "atypical and significant hardship in relation to the ordinary incidents of prison life."  Because prisoners can expect to be handcuffed and placed in leg shackles at various times while serving their sentences, I recommend finding that plaintiff did not suffer an atypical and significant hardship when he spent fifty hours in ambulatory restraints.  Accordingly, plaintiff did not have a liberty interest in not being placed in ambulatory restraints for fifty hours and was thus not entitled to procedural due process before the restraints were secured. *See Key v. McKinney*, 176 F.3d 1083, 1086-87 (7th Cir. 1999).

Cir.1994)(denying motion for summary judgment to defendant who authorized inmate's continued placement in top-of-bed restraints for seventy-two hours after inmate damaged cell toilet and repeatedly kicked cell door because record did not establish as matter of law that purpose of continued physical restraint was not punitive).   However, physical restraints are constitutionally permissible where there is a legitimate penological justification for their use. *See Key,* 176 F.3d at 1086-87 (finding no Eighth Amendment violation where prisoner was placed in ambulatory restraints for twenty-four hours after he threw water on a prison guard); *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir.1991)(holding that prison officials' placement of prisoner in four-point restraints for twenty-eight hours, with only brief intervals for toilet use, was not excessive force where prisoner made verbal threats to staff, spat and threw bodily fluids on them; purpose of restraints was to reduce or eliminate prisoner's ability to inflict physical harm to himself or to the correctional officers).

BOP P.S. 5566.05 authorizes prison staff to use physical force and to apply physical restraints as necessary to, *inter alia*, gain control of an inmate for the purpose of protecting others or to enforce institutional regulations.  After staff have gained control of the inmate through the temporary application of restraints, staff must notify the Warden immediately and he must decide  whether the use of restraints should continue.  P.S. 5566.05,¶6.d.  Restraint equipment may not be used as a method of punishing an inmate. *Id.*, ¶6.h(1)

Ambulatory restraints do not cause pain unless the inmate resists application. (Collins Declaration, at ¶22; Ortega Declaration, at ¶14)  Ambulatory restraints are

13

designed to allow the prisoner to move around in his cell and to perform his daily living activities.  (Ortega Declaration, at ¶12; BOP P.S. 5566.05,¶9)

The "After-Action Review Report/Use of Force, Restraints. . ." contains the following official "Description of Incident":

> At 9:15 a.m., on February 12, 2003, inmate Mitchell Garraway, #38096-066, of the Special Housing Unit became assaultive. During an interview inmate Garraway charged towards the SHU #4 Officer attempting to strike him with his body.  Inmate Garraway was immediately placed on the ground to control his aggressive behavior. The inmate continued his disruptive conduct resisting staff's attempts to control him.   Inmate Garraway was placed in ambulatory restraints. The Physician Assistant examined inmate Garraway and found no injuries.

(MSJ Ex. 21, at 9)   The After-Action Review Report also states that ambulatory restraints were applied to enforce institutional regulations.  (*Id.* at 8)

As discussed previously, defendants submit several declarations stating that as he headed for the door, plaintiff attempted to assault officer Spann.  Plaintiff avers that he did not charge or lunge at any staff members when he attempted to leave the SHU lieutenant's office, nor did he resist staff's efforts to place him in ambulatory restraints.  (Plaintiff's October 5, 2005 Declaration, Responses to Lincoln, Rittenmeyer, and Robles Declarations)  While plaintiff was given an incident report for "attempted assault on staff," the DHO found that plaintiff did not commit a prohibited act and ordered the incident report expunged.

If defendants' only justification for placing plaintiff in ambulatory restraints was because of plaintiff's alleged attempted assault on a staff member, I would recommend finding that genuine issues of material fact existed about whether the restraint was punitive

14

or was justified by a legitimate penological interest.  However, the evidence is undisputed that plaintiff violated institutional rules when he got up from his chair and walked towards the door without permission.   Defendants have a legitimate penological interest in enforcing prison rules.   Moreover, plaintiff does not allege that defendants applied the restraints in a manner to inflict pain. The undisputed evidence is that ambulatory restraints do not cause pain when applied properly.   Accordingly, I recommend finding that defendants' initial placement of plaintiff in ambulatory restraints did not violate plaintiff's Eighth Amendment rights. *See Hudson*, 503 U.S. at 7 (constitutional inquiry in an Eighth Amendment excessive force claim focuses upon whether an "unnecessary and wanton infliction of pain" has occurred); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992)(1992)(recognizing that "prison conditions involving the wanton and unnecessary infliction of pain, totally without penological justification, offend the constitution")(citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

The next question is whether the Warden's decision to continue plaintiff in ambulatory restraints for fifty hours violated plaintiff's Eighth Amendment rights.  The record demonstrates that the Warden approved the continuation of the restraints based on the defendants' reports that plaintiff had behaved in a threatening manner towards staff in the SHU lieutenant's office, and based on reports about plaintiff's unwillingness to comply with staff directives during the ensuing fifty hour period.  (Declaration of Joseph R. Gunja, at ¶2, 8, 10-11, 13-15, 19)   The staff members who checked on plaintiff every fifteen minutes, as required by BOP policy, noted that plaintiff refused to answer staff's questions and was uncooperative. (MSJ Ex. 21, Restraint Application Review Form notes)

15

Associate warden Rios, defendant Capt. Ortega, and defendant Lieutenants Maroni and Valle, had authority to order the removal of the restraints during the fifty hour period, (*see* Rittenmeyer Declaration, at ¶26), but did not do so, relying on the same staff reports and Restraint Application Review Form notes.  (Declaration of Michael Maroni, at ¶¶11-13; Declaration of Benjamin Valle, at ¶¶12-15; Declaration of Hector Rios, at ¶¶7, 9-11) There is no evidence that defendants Gunja, Rios, Ortega, Maroni or Valle knew whether the reports that plaintiff had attempted to assault a staff member were inaccurate or incorrect. The warden and his designees relied on those reports in good faith, together with plaintiff's history of insubordinate behavior, and reports that plaintiff continued to be uncooperative while restrained, in order to continue plaintiff in ambulatory restraints for fifty hours. Further, there is no evidence that plaintiff complained to anyone during the fifty-hour period that the restraints were causing him pain.  I recommend finding that plaintiff has failed to establish the existence of a material factual dispute about whether defendants Gunja, Rios, Ortega, Maroni and Valle violated plaintiff's Eighth Amendment rights when they continued plaintiff in ambulatory restraints for fifty hours.

Similarly, defendant Drennan, the health services administrator, avers that, to his knowledge, the statements made by staff members to justify the use of ambulatory restraints on plaintiff were true.  (Declaration of Guy Drennan, at ¶13) Plaintiff has not pointed to any evidence to the contrary. Accordingly, plaintiff has also failed to demonstrate the existence of a material issue of fact from which a jury could reasonably conclude that defendant Drennan should be found liable for his role in the decision to continue restraining plaintiff for fifty hours.

Although factual issues remain about whether defendant Rittenmeyer, an executive staff member with authority to remove the restraints, knew that plaintiff's placement and continuation in ambulatory restraints was not justified by plaintiff's alleged attempted assault of a prison guard, the evidence is undisputed that plaintiff violated prison rules by attempting to leave the SHU lieutenant's office unescorted and that he continued to be uncooperative with staff members after he was restrained. Even if Rittenmeyer violated plaintiff's constitutional rights by not releasing plaintiff from the restraints sooner, I recommend finding that defendant Rittenmeyer is entitled to qualified immunity because his conduct did not violate clearly established law.

A law is "clearly established" for purposes of qualified immunity if there is a Supreme Court or Tenth Circuit decision on point, or if "the clearly established weight of authority from other circuits [has] found the law to be as the plaintiff maintains." *Johnson v. Martin*, 195 F.3d 1208, 1216 (10th Cir. 1999)(quoting *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999))(internal citation omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see, also, Saucier v. Katz*, 533 U.S. 194, 202 (2001)(stating that for the law to be clearly established, it must "be clear to a reasonable [prison administrator] that his conduct was unlawful in the situation he confronted."); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)("the salient question . . . is whether the state of the law [at the relevant time] gave [defendants] fair warning that their alleged [conduct] was unconstitutional."

Plaintiff has not cited, nor has the court's research revealed, any federal appellate

case law holding that a prison official who maintains a prisoner in <u>ambulatory</u> restraints for two days because the prisoner violated an institutional rule and continued to be uncooperative violates the Constitution, in the absence of any evidence that defendant applied the restraints to cause pain.

Plaintiff also claims that defendants Rittenmeyer, Santos-Collins, Grafton, Gunja, Lincoln, Rittenmeyer, Robles, Sams, and Watson violated his Fifth Amendment substantive due process rights when they made false statements in written reports to justify the use of physical restraints[6] against plaintiff for more than two days for punitive reasons. Plaintiff cites *Napue v. Illinois*, 360 U.S. 264 (1959) in support of his claim. *See* Memorandum of Law in Support of Prisoner Complaint, filed June 24, 2004. In *Napue*, the Supreme Court held that the State's knowing use of false evidence or false testimony to obtain a criminal conviction violates a criminal defendant's substantive due process rights. Here, the defendants did not use the allegedly false reports to obtain a criminal conviction, and the record establishes that defendant Rittenmeyer's attempt to obtain a disciplinary conviction against plaintiff failed. Plaintiff does not point to any clearly established federal law, and the court is not aware of any, holding that a prisoner's substantive due process rights are violated by prison staff's preparation of false reports that have no effect on the

---

[6]Plaintiff asserts that defendant Rittenmeyer falsified an incident report when he claimed that plaintiff lunged at officer Spann and that Rittenmeyer, Lincoln, Robles and Watson falsified other documents in which they claimed that plaintiff "charged" or "lunged" at Spann and attempted to strike him with his body, engaged in "aggressive . . . combative behavior," "continued his disruptive . . . assaultive conduct," and "continued to display an assaultive . . . demeanor towards staff." (*Id.* at 3b, and attached exs. 1-5)  Plaintiff further alleges that defendant Sams, a counselor, and defendant Grafton, a case manager, falsified their reports of the incident because they did not arrive in the SHU until fifteen minutes after the incident occurred and could not have observed what happened. (Compl. 2, 2b, 3b, and attached exs. 7-8) Plaintiff also alleges that defendant physician's assistant Santos-Collins falsified the inmate injury assessment report when she stated that plaintiff had assaulted staff. (Compl., 3c and attached ex. 14)

inmate's duration of confinement.  Moreover, it is undisputed that plaintiff's placement in ambulatory restraints did not affect the length of his prison sentence.  (*See* Brieshke Declaration, ¶9) Accordingly, plaintiff's substantive due process claim based on defendants' false reporting should be dismissed.

To summarize, I recommend finding that all the defendants are entitled to summary judgment on plaintiff's claims that defendants violated his Eighth Amendment rights when they initially placed him in ambulatory restraints and then continued the restraints for fifty hours.  Summary judgment should also be granted in defendants' favor on plaintiff's Fifth Amendment substantive and procedural due process claims.

D.    Humane conditions of confinement

Plaintiff next claims that his Eighth Amendment right to humane conditions of confinement was violated while he was in ambulatory restraints because defendants Collins, Drennan, Gunja, Lincoln, Maroni, Ortega, Rios, Rittenmeyer, Robles, Valle and Watson refused plaintiff's verbal requests to remove his pants/coveralls so that plaintiff could use the toilet, causing plaintiff to defecate in his clothing on February 13 and 14, 2003, and then forced plaintiff to remain in soiled clothing.

Conditions of confinement violate the Eighth Amendment "only when the alleged deprivation is objectively, sufficiently serious, and the prison official acts with deliberate indifference to inmate health or safety." *Atkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995)(internal citations and quotations omitted); *Farmer v. Brennan*, 511 U.S. 825,  837 (1994).  A deprivation is sufficiently serious if the inmate has been denied the minimal civilized nature of life's necessities.  *Farmer,* 511 U.S. at 834.  Such necessities include

food, exercise, clothing, shelter, safety, hygienic items, and medical care. *Rhodes*, 452 U.S. at 348; *Wilson v. Seizer*, 501 U.S. 294, 303 (1991); *Farmer*, 511 U.S. at 832; *Ramos v. Lam.*, 639 F.2d 559, 568 (10th Cir. 1980).

The Eighth Amendment "'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir.1998)(quoting *Rhodes*, 452 U.S. at 347).  To satisfy the objective prong of the *Farmer* test, an inmate must show that conditions were not only uncomfortable, but also rose to the level of "conditions posing a substantial risk of serious harm" to inmate health or safety. *Farmer*, 511 U.S. at 834.  The severity and duration of the deprivation are relevant factors in determining the seriousness of the deprivation. *Barney*, 143 F.3d at 1311; *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).

Plaintiff avers that the ambulatory restraints prevented him from removing his coveralls to use the toilet, that he defecated in his clothing on February 13 and 14, 2003, and that he was forced to move about his cell and to eat and sleep with feces pasted to his body and the inside of his clothing until the restraints were removed at approximately 1:00 p.m. on February 14, 2003.  (Compl., at 6; Plaintiff's October 5, 2005 Declaration, at 23, 33; Declaration of Benjamin Brieshke, ¶12, and attached Restraint Application Review Form notes)

Several defendants have submitted affidavits attesting that inmates placed in hard ambulatory restraints are able to sleep, eat, relieve themselves (including removing any necessary clothing), and wash themselves.  (Declarations of Drennan, at ¶7;  Gunja, ¶21; Maroni, ¶19; Ortega, ¶12; Rios, ¶13; Rittenmeyer, ¶28; Robles, at ¶13; Valle, ¶19) Further,

the BOP Program Statement on Application of Restraints on Inmates defines "ambulatory restraints" as "approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human needs without staff intervention." BOP P.S. 5566.05, ¶9.

The record shows that if restraints are applied properly, inmates should be able to remove them to use the toilet.   Plaintiff's general averment that he could not remove the restraints for toileting  is inadequate in the face of defendants' evidence.  Instead, plaintiff should have provided a detailed explanation about his inability to remove the restraints. However, even if a material factual issue remains about whether plaintiff was unable to remove the restraints, I recommend finding that plaintiff has not satisfied his burden of proof under the objective prong of the Eighth Amendment inquiry in order to defeat the defendants' entitlement to qualified immunity.

In *DeSpain,* 264 F.3d at 974, the Tenth Circuit held that an inmate's allegations that flood conditions in his cell block area backed up toilets and exposed the inmate to other prisoners' urine and feces in the standing water for a three-day period stated an Eighth Amendment violation because it was difficult to avoid contact between the inmates' food and the contaminated water. The Tenth Circuit has also concluded that forcing an inmate to live in a feces-covered cell for three days violates the Eighth Amendment. *See McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).

Other courts have been cautious about condoning conditions that include an inmate's proximity to human waste.  *See, e.g., Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989)(upholding jury's finding that inmate's right to humane conditions of confinement

was violated where inmate was placed in a cell covered with filth and human waste, given a mattress that was torn, dirty, stained with urine, and covered with human waste, and was denied access to proper cleaning supplies); *LaReau v. MacDougall,* 473 F.2d 974, 978 (2d Cir.1972) ("Causing a man to live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.")

Plaintiff's circumstances are factually distinguishable from those in *DeSpain, McBride, Howard* and *LaReau.* First, plaintiff was able to eat his meals without fear of his food being contaminated, unlike the plaintiff in *DeSpain.* There is no evidence that plaintiff was not able to wash his hands while in the ambulatory restraints. Second, the inmates in *DeSpain* and *McBride* were exposed to the unsanitary conditions for three days. In *LaReau,* the offensive conditions lasted for five days. The inmate in *Howard* was forced to live in a cell covered with human waste for approximately two years. Here, plaintiff states that he soiled himself sometime on February 13, 2003 and again on February 14. The restraints were removed at approximately 1:00 p.m. on February 14. The brevity of the condition, together with its confinement to a limited area and plaintiff's ability to wash his hands, did not give rise to a serious health hazard.

Moreover, even if forcing an inmate to wear feces-soiled pants for any period of time is a sufficiently serious deprivation to satisfy the objective prong of the Eighth Amendment inquiry because of the human degradation involved, I recommend finding that defendants are entitled to qualified immunity because there is no clearly established law which would have placed a reasonable prison official on notice that allowing plaintiff to remain in feces-soiled clothing for approximately one day violated the plaintiff's constitutional rights. *See,*

22

*e.g., Key*, 176 F.3d at 1086 (holding that prisoner who was restrained in handcuffs and shackles for twenty-four hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation).

Accordingly, I recommend finding that plaintiff has failed to show that he was subjected to a condition of confinement sufficiently serious to satisfy the objective prong of the Eighth Amendment inquiry.  Defendants are entitled to summary judgment on plaintiff's claim that defendants violated his Eighth Amendment right to humane conditions of confinement when they  failed to remove the ambulatory restraints so that plaintiff could use the toilet and when they forced him to wear soiled pants for approximately one day.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that the Federal Defendants' Motion to Dismiss, filed April 19, 2005, be **GRANTED**.  It is

**FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment and Brief in Support Thereof, filed September 16, 2005, be **GRANTED IN SUBSTANTIAL PART AND DENIED IN PART AS FOLLOWS:** Plaintiff's constitutional claims against defendants Drennan, Grafton, Gunja, Lincoln, Maroni, Ortega, Rios, Rittenmeyer, Robles, Sams, Santos-Collins, Valle and Watson should be **DISMISSED**, **except** plaintiff's Eighth Amendment excessive force claims against defendants Rittenmeyer, Lincoln, Robles and Watson which are based on the assault which occurred in the SHU Lieutenant's office on February 12, 2003.  It is

**FURTHER RECOMMENDED** that defendants United States of America, Federal

23

Bureau of Prisons, Guy Drennan, Dale Grafton, Joseph Gunja, Mike Maroni, Leonel Ortega, Hector A. Rios, Richard Sams, Celest Santos-Collins, and Benjamin Valle be **DISMISSED**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated July 24, 2006.

BY THE COURT:

s/ Patricia a. Coan
PATRICIA A. COAN
United States Magistrate Judge